## Farris v. Commonwealth.

Oct. 1, 1943.

C. A. Noble and J. H. Asher for appellant.

Hubert Meredith, Attorney General, and Frank A. Logan, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The appellant was convicted of voluntary manslaughter and sentenced to ten years imprisonment. He seeks a reversal on the grounds that the jury's verdict was the result of passion and prejudice; and that the Court erred in failing to instruct the jury on appellant's right to defend his home and family.

The homicide occurred early in the evening of Saturday, August 1, 1942, and was preceded by a quarrel on a railroad train, during which, the deceased, Roosevelt (Rose) Watson, threatened appellant, and displayed an open knife in his "front pocket." The parties lived in adjoining houses in the town of Glomawr, and had spent the day in Hazard. Apparently, the deceased was under the influence of liquor and rejected appellant's offer of reconciliation when they parted at the depot on their return. Each went to his home, the appellant stopping on the way to borrow a shotgun from a neighbor for use on a contemplated hunting trip. According to appellant, the deceased, on seeing him, cursed him, and started down the steps of his porch with a shotgun in his hand. Thereupon, appellant procured his .22 caliber rifle and was in the act of seeking shelter under his porch when the deceased opened fire on him. Several shots were exchanged, appellant was wounded, and the deceased killed.

According to the Commonwealth's testimony, when appellant arrived at his home, the deceased was sitting on his porch vomiting from the effect of the liquor which he had drunk. Appellant immediately entered his house, procured his rifle, came out on his porch, called to deceased asking him if he was ready, and saying, "I got my gun you go for yours." In obedience to the command, deceased entered his house and returned with his gun, whereupon appellant shot at him.

The testimony is conflicting as to who fired the first shot and as to the exact position of the parties when the duel began and ended. However, it is to be noted that while appellant claims that he shot deceased because he was afraid that he was coming to his home to kill him and his family, and there was some evidence that deceased had completed the descent of the steps and had advanced toward appellant's house when he fell, appellant stated on cross-examination: "I felt like if a man shot at me if I can I would shoot back," and "I knowed he would come over there and kill me in the house. He threatened to." Although the preponderance of the testimony indicated that the deceased was the inciter of the ill feeling which had arisen between the two men, and fired the first shot, it is obvious from the testimony that there was neither attempt nor threat by either to injure any member of the other's family, nor to harm his home. The accuracy of the marksmanship also refutes such a theory. It follows that the instruction given by the court as to the right of the appellant to defend himself, fully presented his defense, and that he was not entitled to an instruction touching his right to defend his habitation and family. Winchester v. Commonwealth, 210 Ky. 685, 276 S. W. 575; Engle v. Commonwealth, 258 Ky. 118, 79 S. W. (2d) 417; Rhodes v. Commonwealth, 278 Ky. 504, 128 S. W. 948.

As to the appellant's claim that the verdict was flagrantly against the weight of the evidence, and hence, was the result of passion and prejudice on the part of the jury, it is sufficient to quote the rule governing cases such as this as set forth in the case of Bigby v. Commonwealth, 273 Ky. 335, 116 S. W. (2d) 659, 662:

"Here there was proof, and admission by the appellant, that he fired the shots which took the life of deceased. The only question in such cases to be decided by the jury is whether or not the act of the ac-

cused is excusable, because committed in his defense. Admission by the accused that he killed Spencer made it incumbent upon him to furnish proof that his act was excusable, under all the facts and circumstances. Whether or not he has so done is and has always been, under our repeated decisions in like cases, a matter peculiarly for the jury, * * * unless defendant's proof uncontradictedly establishes his defense without the possibility of doubt.''

Judgment affirmed.